VENABLE LLP | 1290 AVENUE OF THE AMERICAS
20TH FLOOR | NEW YORK, NY 10104
T +1 212.218.2100  F +1 212.218.2200  Venable.com

July 20, 2020

**Christopher P. Borello**
T 212.218.2574
F 212.218.2200
CBorello@Venable.com

<u>*VIA ECF*</u>

Hon. Andrew L. Carter, Jr.
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 1306
New York, NY 10007

Re:   *Rady v. Boston Consulting Group, LLC & De Beers UK Ltd.*,
      Case No.: 1:20-cv-02285-ALC

Dear Judge Carter:

We represent De Beers UK Limited ("De Beers") in the above-referenced action. Pursuant to Rule 2.A of Your Honor's Individual Rules of Practice, we request a pre-motion conference regarding De Beers' anticipated motion to dismiss Counts I-III of Plaintiff's First Amended Complaint.

### I.   Count I Should Be Dismissed Pursuant to 35 U.S.C. § 101 Because the Patent Claims Ineligible Subject Matter.

Plaintiff's patent infringement claim (Count I) should be dismissed under Fed. R. Civ. P 12(b)(6) because all claims of the asserted patent ("the '250 patent") are invalid under 35 U.S.C. § 101. *See Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1380 (Fed. Cir. 2016) (affirming decision granting motion to dismiss for failure to state a claim because claims were directed to patent-ineligible subject matter under § 101). The claims fail the two-part test for subject matter eligibility because they: (1) are directed to an abstract idea, and (2) contain no inventive concept.

#### A.   The Claims Are Directed to an Abstract Idea.

In evaluating whether a patent claim is directed to an "abstract idea," courts generally compare claims at issue to prior claims deemed to be directed to an abstract idea. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). Here, the claims are directed to collecting, processing, and storing information, which the Federal Circuit has held to be a patent-ineligible abstract idea.

For example, in *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1345 (Fed. Cir. 2014), the claims recited a method that involved extracting data from documents using an automated digitizing unit such as a scanner. The claims were found directed to an abstract idea of "1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory." *Id.* at 1347. Similarly, in *In re TLI*

**VENABLE | Fitzpatrick**

Hon. Andrew L. Carter, Jr.
July 20, 2020
Page 2

*Commc'ns LLC Patent Litig.*, 823 F.3d 607, 610-11 (Fed. Cir. 2016), the claims, which recited a "method for recording and administering digital images," were found directed to an abstract idea of "classifying and storing digital images in an organized manner."

The claims here involve recording to a blockchain unique identifiers of physical items, and they mirror the data gathering, processing, and storing claims held invalid in the cases above. First, the claims of the '250 patent involve gathering spectral analysis data and 3D scan data. Second, the claims involve processing that data by generating a unique signature and comparing it against previously-recorded unique signatures, similar to steps of "recognizing certain data" and "classifying" data in *Content Extraction* (776 F.3d at 1347) and *TLI* (823 F.3d at 613), respectively. Third, the claims involve storing data by recording it to the blockchain.

While the '250 patent claims recite certain physical components, they do not transform the abstract idea into a patent-eligible concept. *See TLI*, 823 F.3d at 615. In this regard, the '250 patent claims resemble those held ineligible in *Automated Tracking Sols., LLC v. Coca-Cola Co.*, 723 F. App'x 989, 994 (Fed. Cir. 2018). The patent in *Automated Tracking* related to systems for "locating, identifying, tracking, and surveilling objects," just as the '250 patent relates to tracking objects. *Id.* at 991. The claim in *Automated Tracking* recited a reader (scanner) that acquires data, similar to the imaging device that is configured to determine spectral analysis data and 3D scan data in the claims of the '250 patent. *Id.* at 991-92 & n.2. The claim in *Automated Tracking* further recited a transponder that transmits data, like the communications subsystem communicates data in the claims of the '250 patent. *Id.* at 992. The claim in *Automated Tracking* also recited a processor configured to analyze the data and generate detection information associated with a first and second sighting of an object, like the "processing devices" in the claims of the '250 patent configure the network node to analyze data and determine a unique signature that is compared against previous unique signatures. *Id.* at 992. Finally, the claim in *Automated Tracking* recited storing the detection information, like the recording of the instance of the physical item in the claims of the '250 patent. *Id.*

    **B.**    <u>**The Claims Contain No Inventive Concept.**</u>

The '250 patent claims fail to recite an inventive concept. When examining claims to computer-implemented inventions under step two of *Alice*, courts look for "a specific improvement in the way computers operate." *Enfish*, 822 F.3d at 1336. Here, the claims' "focus . . . is not on such an improvement in computers as tools, but on certain independently abstract ideas [*i.e.*, collecting, organizing, and storing data] that use computers as tools." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016).

Moreover, admissions in the '250 patent undermine any argument that the claims contain an inventive concept. *Intellectual Vent. I LLC v. Symantec Corp.*, 725 F. App'x 976, 978 n.1 (Fed. Cir. 2018) (citing concessions in the specification under step two of *Alice*). For example, the specification makes clear that the following claimed features were known: spectral analysis (Dkt.

Hon. Andrew L. Carter, Jr.
July 20, 2020
Page 3

12-1 8:24-31); measuring physical features to uniquely identify an asset (*id.* 3:54-59); techniques for rotating physical items in virtual space to determine if a match exists (*id.* 4:38-50); providing proof of location to the peer-to-peer network (*id.* 7:20-25); maintaining reputational data for use in accordance with the Blockchain Authentication and Trust Module (BATM) (*id.* 7:46-57).

## II.     Count I Should Be Dismissed Because Plaintiff Failed to Plead a Plausible Claim for Patent Infringement.

For the reasons discussed in the July 20, 2020 letter from Boston Consulting Group, LLC (Dkt. 18) ("BCG's Letter"), Plaintiff also failed to plead facts necessary to state a claim for direct, induced, and/or willful patent infringement against De Beers UK Limited. For example, Plaintiff failed to show how "[t]he De Beers solution" or use of it satisfies the elements of the claims of the '250 patent. And Plaintiff failed to identify any egregious misconduct by De Beers.

## III.    Count II and III Should Be Dismissed Because Plaintiff Failed to Plead Plausible Claims for Trade Secret Misappropriation.

For the reasons discussed in BCG's Letter, Plaintiff failed to plead facts necessary to state a claim for trade secret misappropriation under state law or the DTSA, and therefore Counts II and III should be dismissed.

For example, Plaintiff's failure to describe the alleged trade secret "technology" or "confidential information" with sufficient specificity has not put De Beers on notice as to the alleged trade secrets. *See Lawrence v. NYC Med. Practice, P.C.*, 2019 WL 4194576, at *4-5 (S.D.N.Y. Sept. 3, 2019); *Yeda Research & Dev. Co. Ltd. v. iCAD, Inc.*, 2019 WL 4562409, at *5 (S.D.N.Y. Sept. 5, 2019); *see also Island Intellectual Prop., LLC v. StoneCastle Asset Mgmt. LLC*, 2020 WL 2793000, at *7 (S.D.N.Y. May 29, 2020). And, as discussed in BCG's Letter, any alleged trade secret status is lost when a patent application publishes disclosing it to the public. *See Yeda Research*, 2019 WL 4562409, at *5; *AlterG, Inc. v. Boost Treadmills, LLC*, 388 F. Supp. 3d 1133, 1146 (N.D. Cal. 2019) (dismissing misappropriation claim and requiring plaintiff to "delineate the boundaries between its trade secret and the information that has been made public through patents and applications"); *Bladeron Grp. Ltd. v. Facebook, Inc.*, 2015 WL 8028294, at *4 (N.D. Cal. Dec. 7, 2015) (dismissing misappropriation claim where plaintiffs did not distinguish trade secrets from information publicly disclosed in patent application).

Further, Plaintiff alleges that "Defendants improperly used [his] confidential information as part of Project Midnight to, among other things, develop, use, offer to license, and/or license TRACR" and that at least BCG also used the information "to develop other applications." (Dkt. 12 ¶¶ 91, 98.) But Plaintiff does not plead facts giving rise to a plausible inference that BCG or De Beers misappropriated any alleged trade secrets to "develop" any specific functionality of TRACR. *See Packaging Corp. of Am., Inc. v. Croner*, 419 F. Supp. 3d 1059, 1066, 1078 (N.D. Ill. 2020) (dismissing DTSA claim where plaintiff failed to allege factual support for misappropriation claim).

**VENABLE | Fitzpatrick**

Hon. Andrew L. Carter, Jr.
July 20, 2020
Page 4

Respectfully submitted,

/s/ Christopher P. Borello
Christopher P. Borello

Copies to:

Counsel of Record