# WHITEFORD, TAYLOR & PRESTON L.L.P.

KENNETH M. LEWIS
PARTNER

DIRECT LINE (914) 761-8400
DIRECT FAX (914) 580-9177
KLewis@wtplaw.com

220 WHITE PLAINS ROAD
TARRYTOWN, NEW YORK 10591

MAIN TELEPHONE (914) 761-8400
FACSIMILE (914) 580-9177

DELAWARE*
DISTRICT OF COLUMBIA
KENTUCKY
MARYLAND
MICHIGAN
NEW YORK
PENNSYLVANIA
VIRGINIA

WWW.WTPLAW.COM
(800) 987-8705

July 23, 2020

Hon. Andrew L. Carter, Jr.
United States District Judge
Southern District of New York
40 Foley Square, Courtroom 1306
New York, NY 10007

      Re:   *Rady v. Boston Consulting Group, LLC et al.*,
              Case No.: 1:20-cv-02285-ALC

Dear Judge Carter:

      We represent plaintiff Max Rady. Pursuant to Rule 2.A of Your Honor's Individual Rules of Practice, we set forth herein Mr. Rady's position with respect to Defendant BCG's and Defendant De Beers's letters requesting a pre-motion conference regarding their proposed motions to dismiss Counts I-III of Mr. Rady's First Amended Complaint [Doc. No. 12]. As an initial note, Plaintiff respectfully directs the attention of this Court to the allegations of the Complaint, specifically at paragraphs 10-57. Mr. Rady shared with his employer BCG, on a confidential basis, the invention he developed during his graduate studies in order to assist it with the development of the TRACR product, which De Beers commissioned it to develop. At the time BCG sought the information, it was struggling to design the application. Shortly after receiving this information from Mr. Rady, BCG announced it completed development of TRACR, and provided it to De Beers, which promptly released it worldwide. When Mr. Rady approached BCG to negotiate a license for the technology, he was summarily fired, notwithstanding exemplary reviews. Mr. Rady's patent was granted shortly thereafter, the subject matter of which is nearly identical to all of the information publically disclosed about TRACR. Defendants have never denied that they stole Mr. Rady's invention and confidential information, and instead are attempting to avoid having to face the merits of this case by the proposed motion.

      I.      <u>The Patent is Not Directed to Ineligible Subject Matter.</u>

      The Supreme Court's two-step framework for analyzing patent eligibility under *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014), requires first a determination of whether the claim at issue is "directed to ... [a] patent-ineligible concept," such as an abstract idea. If so, a court then proceeds to step two, which the Supreme Court has held includes "a search for an 'inventive concept' - *i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent,

in practice, amounts to significantly more than a patent upon the [ineligible concept] itself." Put another way, something more than "well-understood, routine, conventional activities previously known to the industry" must be disclosed and claimed.

The claims of Mr. Rady's patent define far more than a mere abstract idea. Claim 1, for example, recites specific and specialized hardware including "item analysis components" including "at least one imaging device configured to determine spectral analysis data and 3D scan data from measurements generated by the item analysis components," with such data generated by this specialized hardware being used to determine a "unique signature" or "fingerprint" for a physical item. Claim 1, in short, is specifically directed to a novel "fingerprinting" machine for physical items.

Notwithstanding the foregoing, even if the analysis were to proceed to the second step, the subject matter defined by the claims is highly inventive. While it is true that certain elements of the claim are known, it is also true that no invention arises out of thin air. Rather, every invention is a combination of old elements and ideas, but combined in new and non-obvious ways. *Reiner v. I. Leon Co.*, 285 F.2d 501, 503 (2d Cir. 1960), *cert. denied* 366 U.S. 929, 81 S. Ct. 1649 (1961) ("substantially every invention" is a "combination of old elements.").

The invention of the present claims solved the very difficult, and previously unsolved, problem of how to establish and track the provenance of diamonds, precious gems, and other physical articles. No other technology had solved the problem of establishing a unique "fingerprint" for physical items. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F. 3d 1306 (Fed. Cir. 2019) (plausible and specific factual allegations that aspects of the claims are inventive can be sufficient to defeat a motion to dismiss when not wholly divorced from the claims or the specification). In *Cellspin*, where the plaintiff made specific, plausible factual allegations about why aspects of its claimed inventions were not conventional, the Federal Circuit overturned the district court's dismissal holding that it had no basis, at the pleadings stage, to say that these claimed techniques, among others, were well-known or conventional as a matter of law.

II. Dismissal of Count 1 is Inappropriate Because It is A Question of Fact and Requires Claim Construction

In any event, the determination of whether the claims define eligible subject matter is premature at this stage, as the determination of whether the claims define an inventive concept is a factual determination. *Cellspin Soft, Inc., supra.* (reasoning that factual disputes about whether the claims are inventive may preclude dismissal at the pleadings stage under §101).

Moreover, claim construction is a prerequisite of determining whether the claims define an inventive concept. *Baxter Healthcare Corp. v. Becton, Dickinson and Co.*, 2018 WL 6220132, No. 3-17-cv-02186 (S.D. Cal. Sept. 5, 2018) (denying motion to dismiss on the basis that the asserted patent claims were ineligible, holding that at least claim construction was necessary to determine whether the claims contained an inventive concept); *Magnacross LLC v. ABP Int'l,*

*Inc.*, No. 3:18-cv-02368 (N.D. Tex. Feb. 25, 2019) (denying motion to dismiss on the basis that the patent claims were ineligible, as claim construction had not yet occurred). As such, dismissal of Claim 1 is inappropriate.

> II. <u>Plaintiff Will Amend the Complaint to Assert Additional Facts in Support of his Claims for Patent Infringement.</u>

The Complaint pleads sufficient facts to state a claim for patent infringement. *See, e.g.,* Par. 12-14 (BCG, having difficulty with a gemstone provenance project for DeBeers, contacted Mr. Rady for assistance in view of his research and expertise in the field, received a copy of his unpublished patent application, and shortly thereafter was able to complete the project for DeBeers which became known as TRACR; TRACR infringes Mr. Rady's patent); Par. 31 (the filing of Mr. Rady's patent application); Par. 34-41 (BCG's requests to Mr. Rady for more details of his invention, assurances of confidentiality, and suggestions that it was interested in licensing Mr. Rady's invention); Par. 51-54 (description of TRACR and overlap with the subject matter of Mr. Rady's patent application); and Par. 63-65 (assertion that BCG and De Beers knowingly took Mr. Rady's patented invention). Assuming that the allegations of the Complaint are true, and drawing all reasonable inferences in Mr. Rady's favor, the Complaint sets forth sufficient facts to state a claim for patent infringement. Nevertheless, Plaintiff intends on amending his Complaint to assert additional facts to support his claims for patent infringement.[1]

> IV. <u>Plaintiff Will Amend the Complaint to Assert Additional Facts in Support of its Claims for Trade Secret Misappropriation.</u>

Mr. Rady's disclosures to BCG extended beyond the subject matter of his patent application, which additional information he was repeatedly assured would be kept confidential by BCG and would not be used absent his authorization. *See*, Par. 32-41. BCG misappropriated this information for its own use and for the use of De Beers. Notwithstanding the foregoing, Mr. Rady intends on amending his Complaint to assert additional facts in support of his claim for trade secret misappropriation.

Respectfully yours,

*/s/ Kenneth M. Lewis*

Kenneth M. Lewis

---

[1] Mr. Rady was already preparing an amended complaint to address, among other things, the proper BCG defendant. In this regard, on July 13, BCG's counsel contacted Mr. Rady's counsel to explain that, notwithstanding certain public statements to the contrary, different BCG entities were responsible for the development of Tracr, including BCG entities in France and the United Kingdom. After further investigation, Mr. Rady's counsel contacted BCG's counsel on July 17 with additional information that called into question the accuracy of the earlier statements about the French and British BCG entities. BCG's counsel contacted Mr. Rady's counsel on July 20 confirming that Mr. Rady's understanding of BCG's corporate structure discussed on July 17 was indeed accurate.