WHITEFORD, TAYLOR & PRESTON L.L.P.
444 Madison Avenue, Fourth Floor
New York, NY 10022
(914) 761-8400
klewis@wtplaw.com
Kenneth M. Lewis

WHITEFORD, TAYLOR & PRESTON L.L.P.
Seven Saint Paul Street, Suite 1500i
Baltimore, MD 21202-1636
(410) 347-8700
stiller@wtplaw.com
khroblak@wtplaw.com
Steven E. Tiller
Kevin G. Hroblak

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAX A. RADY,<br><br>　　　　Plaintiff,<br><br>　　　　　　v.<br><br>THE BOSTON CONSULTING GROUP, INC.<br>and De BEERS UK LIMITED,<br><br>　　　　Defendants. | Case No.: 1:20-cv-02285 (ALC)<br><br>Judge Andrew L. Carter, Jr. |

## PLAINTIFF MAX A. RADY'S OPPOSITION TO DEFENDANT BOSTON CONSULTING GROUP, INC.'S MOTION TO DISMISS

## TABLE OF CONTENTS

I.     BACKGROUND ........................................................................... 1

II.    APPLICABLE MOTION TO DISMISS STANDARD .............................. 4

III.   ARGUMENT………...................................................................... 5

       I.     Mr. Rady Pled a Viable Claim for Direct, Willful, and Indirect
             (or Induced) Infringement................................................................. 5

             a.    Direct Infringement................................................ 6

             b.    Willful Infringement .............................................. 7

             c.    Induced Infringement............................................. 8

IV.   CONCLUSION........................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ....... 4

*Batruk v. Mitsubishi Motors Corp.*, No. 94 CIV. 7593 (KMW),
1996 WL 153942, at *2 (S.D.N.Y. Apr. 2, 1996)........................................................ 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570,
127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) ................................................................. 4

*Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 771,
131 S. Ct. 2060, 2072, 179 L. Ed. 2d 1167 (2011)  ................................................. 9

*Gucci Am., Inc. v. Frontline Processing Corp.*,
721 F. Supp. 2d 228 (S.D.N.Y. 2010) ....................................................................... 6

*Icon Outdoors, LLC v. Core Res., Inc.*, No. CIV.A. RDB-11-2967,
2013 WL 2476392, at *14 (D. Md. June 7, 2013 ...................................................... 3

*Kelly-Brown v. Winfrey*, 717 F.3d 295, 314 (2d Cir. 2013)...................................... 5

*Lego Sys. A/S v. Rubicon Commc'ns, LP*, No. 3:15-CV-000823 (VLB),
2017 WL 2423051, at *4 (D. Conn. June 5, 2017).................................................... 5

*Little Mole Music v. Spike Inv., Inc.*, 720 F. Supp. 751 (W.D. Mo. 1989) ............... 6

*Mickowski v. Visi-Trak Corp.*, 36 F. Supp. 2d 171 (S.D.N.Y. 1999),
*aff'd*, 230 F.3d 1379 (Fed. Cir. 2000) ....................................................................... 8

*MPC Franchise, LLC v. Tarntino*, 826 F.3d 653, 660 (2d Cir. 2016)  ..................... 9

*Ocean Innovations, Inc. v. Quarterberth, Inc.*,
No. 1:03CV0913, 2009 WL 10689365, at *5 (N.D. Ohio Mar. 31, 2009) .............. 6

*Prestige Pet Prod., Inc. v. Pingyang Huaxing Leather & Plastic Co.*,
767 F. Supp. 2d 806 (E.D. Mich. 2011)..................................................................... 3

*Salas v. New York City Dep't of Investigation*,
298 F. Supp. 3d 676 (S.D.N.Y. 2018)........................................................................ 4

*SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*,
376 F. Supp. 3d 369 (S.D.N.Y. 2019)........................................................................ 9, 10

*Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 810 F.2d 1113 (Fed.Cir.1987) ............... 3

*Torrington Mfg. Co. v. Eng'g Tool & Metals Co.*,
197 F. Supp. 205 (S.D. Tex. 1961) ............................................................................ 5

**Statutes**

35 U.S.C. § 154 .......................................................................................................... 3

35 U.S.C. § 271 .......................................................................................................... 9

Plaintiff, Max. A. Rady ("Mr. Rady"), by and through his undersigned counsel, respectfully files this Opposition to the Motion to Dismiss filed by Defendant Boston Consulting Group, Inc. ("BCG"), and in support thereof, states:

## I.    BACKGROUND

According to a May 2019 article by BCG titled "Stamping out Counterfeit Goods with Blockchain and IoT," counterfeiting is a widespread economic problem that results in billions of dollars in lost business revenue each year, exposing individuals and corporations to heightened health, safety, and cybersecurity risks from fraudulent materials and defective parts.  For example, within the pharmaceutical industry, between $75 billion and $200 billion in counterfeit drugs are sold each year.  ECF 30 at ¶1.

The gemstone industry has long struggled with keeping counterfeits out of the market and providing greater transparency of the provenance and sourcing of each particular stone.  The benefits to the industry of a quick, reliable, and transparent application to confirm provenance and sourcing could be significant.  For example, studies have shown that customers are willing to pay an increased amount for a stone that is guaranteed to be both legitimate and ethically sourced. ECF 30 at ¶3.

In August 2010, Mr. Rady began a joint Masters/PhD research program as a part-time, self-funded student at the prestigious Kings College at the University of London. Mr. Rady's research focused on physical optical properties, photonics, spectroscopy, and statistical modeling and analysis for predictive rendering relating to physical assets, including gemstones. ECF 30 at ¶6. As part of his research efforts, Mr. Rady developed a method to record to a blockchain the individual identification signatures of physical items, including gemstones, having unique, random properties.  ECF 30 at ¶7.  In particular, physical items are analyzed using 3D spatial mapping and

spectral analysis to determine each item's individual identification signature.  *Id*. These signatures are then recorded to a blockchain allowing users to guarantee the authenticity and provenance of each item's location and source throughout the supply chain, even where significant modifications are made to that item.  *Id*.  Using Mr. Rady's system and method, the provenance of gemstones can be easily and quickly authenticated throughout the supply chain without the need to confirm with a central authority no matter how many times the gemstone is cut, polished, or otherwise modified. ECF 30 at ¶8.  Certain aspects of Mr. Rady's technology are now claimed in United States Patent No. 10,469,250 ("the '250 patent").  ECF 30 at ¶9.

In June 2016, BCG hired Mr. Rady, who served in various roles working primarily on two projects wholly unrelated to the identification of counterfeit goods or insuring the provenance of gemstones. ECF 30 at ¶10.  Upon information and belief, sometime in 2017, BCG began working with De Beers to develop a method to identify and ensure the provenance of gemstones.  ECF 30 at ¶11.  In early 2018, when, despite considerable effort, BCG had failed to develop a solution for De Beers, certain leaders of the development team overseeing the De Beers project contacted Mr. Rady knowing his PhD research had led to the filing of a patent application that claimed an invention that BCG could possibly implement in a solution for De Beers.  ECF 30 at ¶12.  Mr. Rady disclosed details about the invention claimed in his then unpublished patent application to the BCG team working on the De Beers project only after BCG repeatedly agreed to maintain all information provided it by Mr. Rady in strict confidence and not to use such information for any purpose without his consent.  ECF 30 at ¶13.

Despite its commitment to refrain from using Mr. Rady's invention, BCG, only a few months later, publicized its gemstone provenance and authentication method developed for De Beers, which became known as TRACR.  ECF 30 at ¶14.  This method was substantially similar

to the detailed method disclosed to BCG and infringes on what is now claimed in the '250 patent. *Id*.

BCG now seeks to avoid any liability for its misappropriation of the invention disclosed in Mr. Rady's then-confidential patent application, and its subsequent involvement in the infringement of the now issued patent, by arguing that its improprieties all took place before the November 5, 2019 issuance of the '250 patent, and that it has not had any involvement with the infringing systems it developed since that date.[1]  BCG makes these assertions despite the fact that its Director of South East Asia promoted the infringing technology as a portfolio asset of BCG. ECF 30 at ¶ 19 ("[I]n a July 4, 2019 BCG DV presentation by Hanno Stegmann, [BCG's] Director of South East Asia, discussing [BCG's] partnering with corporations, TRACR was identified as a portfolio asset of [BCG], implying that BCG has an ownership interest in, or partnership involving, TRACR.").  Mr. Rady's second amended complaint includes allegations that follow on this

---

[1]    While BCG focuses on the November 5, 2019 issuance date of the '250 patent, the real date by which BCG could be held liable for any infringing activity is the patent's publication date of June 27, 2019.  Under 35 U.S.C. § 154(d), a patent holder has the right to obtain a reasonable royalty from any person who, during the period beginning on the date of publication of the application for such patent and ending on the date the patent issues, makes, uses, offers for sale, or sells in the United States the invention as claimed in the published patent application if the infringer had actual notice of the published patent application and the invention ultimately claimed in the patent is substantially identical to the invention claimed in the published patent application. U.S.C. § 154(d)(1) and (2).  *See also*, *Icon Outdoors, LLC v. Core Res., Inc*., No. CIV.A. RDB-11-2967, 2013 WL 2476392, at *14 (D. Md. June 7, 2013) (quoting *Slimfold Mfg. Co. v. Kinkead Indus., Inc*., 810 F.2d 1113, 1116 (Fed.Cir.1987)) ("'[A]ny word change whatsoever' is not enough to prove a substantive change, but where a word change alters the scope of a claim, that amended claim is not substantially identical."); *Prestige Pet Prod., Inc. v. Pingyang Huaxing Leather & Plastic Co.,* 767 F. Supp. 2d 806, 812 (E.D. Mich. 2011) ("An amendment that merely clarifies the terms of a claim is not a substantial change, but an amendment that narrows the scope of a claim is a substantial change.").  Here, the claims of the published patent application are substantially similar to the claims of the '250 patent, and there is no question that BCG was well aware of the application's existence having been provided a copy of it by Mr. Rady on or about January 18, 2018, nearly eighteen months before its publication by the USPTO on June 27, 2019.

partnership between BCG and De Beers regarding TRACR.  *Id*. at ¶ 63 ("In 2018, De Beers…with the assistance of, and in partnership with, BCG, launched TRACR….").[2]

Mr. Rady has set forth allegations that certainly imply that BCG has a financial interest in the technologies that infringe his '250 patent. *Id*. at ¶¶ 19, 63, 64, 65, 67, and 68. Moreover, given the mere eighteen months between BCG's misappropriation of Mr. Rady's confidential technology, the development, release and marketing of the infringing technology, and the issuance of the '250 patent, Mr. Rady should not have to simply accept BCG's representation that it has completely washed its hands of this project as of the publication date, or even the issuance date, of the '250 patent.  Rather, Mr. Rady should be permitted to take discovery on the issue to determine the precise scope of BCG's involvement.

## II.  APPLICABLE MOTION TO DISMISS STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must plead enough facts to state a claim to relief that is plausible on its face." *Salas v. New York City Dep't of Investigation*, 298 F. Supp. 3d 676, 682 (S.D.N.Y. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).  In ruling on Rule 12(b)(6) motion, a "court must accept the allegations in the complaint as true, construing them in the light most favorable to the plaintiff.  A complaint should be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Batruk v. Mitsubishi Motors Corp.*,

---

[2]     While the allegation in Par. 63 only refers to the 2018 launch of TRACR, a reasonable inference that can, and should, be drawn from its allegations is that BCG continues to assist and partner with De Beers with regards to TRACR's continued offering.

4

No. 94 CIV. 7593 (KMW), 1996 WL 153942, at *2 (S.D.N.Y. Apr. 2, 1996) (internal quotations and citations omitted).  Here, Mr. Rady has alleged sufficient facts to support a denial of BCG's motion.

### III.   <u>ARGUMENT</u>

### I.   **Mr. Rady Pled a Viable Claim for Direct, Willful, and Indirect (or Induced) Infringement**

Mr. Rady adequately alleged that BCG has a financial stake in the infringing systems at issue here by partnering, or having some other relationship, with De Beers in offering these infringing systems. It is axiomatic that questions raised in pleadings regarding one party's potential liability by virtue of some type of partnership or other relationship with another infringer or tortfeasor are sufficient to survive motions to dismiss. *Torrington Mfg. Co. v. Eng'g Tool & Metals Co.*, 197 F. Supp. 205, 207 (S.D. Tex. 1961) (denying motion to dismiss in a patent infringement suit, stating: "[a]s plaintiff correctly observes, there exists an issue of fact as to whether movant was a partnership at the time complaints were filed.").   Additionally, courts apply standard partnership principles to patent and other intellectual property infringement cases when analyzing these questions.  *See, e.g.*, *Kelly-Brown v. Winfrey*, 717 F.3d 295, 314 (2d Cir. 2013) ("Vicarious liability for trademark infringement requires a finding that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product"); *Lego Sys. A/S v. Rubicon Commc'ns, LP*, No. 3:15-CV-000823 (VLB), 2017 WL 2423051, at *4 (D. Conn. June 5, 2017) (in a patent infringement case, the court held that "[t]he proposed amended complaint alleges that the Thompsons were 'exclusive owners and officers,' meaning at least one of them must have been a general partner, which thus sufficiently alleges that they are directly liable for the acts of [the defendant partnership].");  *Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228,

247 (S.D.N.Y. 2010) (listing elements set forth in *Winfrey*, *supra.*, of vicarious liability in a trademark infringement case); *Ocean Innovations, Inc. v. Quarterberth, Inc.*, No. 1:03CV0913, 2009 WL 10689365, at *5 (N.D. Ohio Mar. 31, 2009) (applying Ohio partnership statute to patent infringement case against partnership); *Little Mole Music v. Spike Inv., Inc.*, 720 F. Supp. 751, 755–56 (W.D. Mo. 1989) ("Liability for copyright infringement may be either direct or vicarious. Personal participation in the infringing activity will result in direct liability. Vicarious liability is predicated on the right and ability of the defendant to supervise the infringing activity or the defendant's obvious and direct financial interest in such an activity.  In either context, infringement can result in personal joint and several liability for all those directly or vicariously involved ... defendants, as partners in B & G, are each directly liable [as] each defendant had a direct financial interest as a partner in an enterprise which encompassed the exploitation of copyrighted material.").

Here, Mr. Rady alleges sufficient facts to support direct, willful, and indirect infringement against BCG as a result of its partnership with De Beers, or at least its financial interest in TRACR, GemFair, and/or the TRACR Association. Accordingly, BCG's motion should be denied.

a. *Direct infringement*

In Paragraph 19 of the Second Amended Complaint, Mr. Rady asserts:

BCG promotes the mission of its BCG DV business unit to include "invent[ing], launch[ing], scal[ing] and invest[ing] in game-changing businesses with the world's most influential corporations."  In this regard, in a July 4, 2019 BCG DV presentation by Hanno Stegmann, BCG DV's Director South East Asia, discussing BCG DV's partnering with corporations, TRACR was identified as a portfolio asset of BCG DV, implying that BCG has an ownership interest in, or partnership involving, TRACR.[3]

---

[3]     This is not the first time that BCG has invested, and/or taken a financial interest, in an asset it created on behalf of a client.  As set forth in the Second Amended Complaint, BCG and the World Wildlife Foundation, in what BCG has characterized as an "innovative partnership," co-founded and launched a new online platform called OpenSC in January 2019 that uses blockchain

Further, the Second Amended Complaint alleges BCG's provision of assistance to, and partnership with, De Beers in launching the infringing technologies – TRACR and GemFair.  ECF 30 at ¶¶ 63-65.  These allegations on their own, and collectively, give rise to the inference that BCG has some type of financial interest in the success of TRACR, GemFair and/or the entity promoting these technologies – the TRACR Association.  At a minimum, Mr. Rady should be entitled to discovery on the subject in light of the allegations in the Second Amended Complaint, the public statements by BCG, and the reasonable inferences that may be drawn therefrom.

It is clear, in construing the well-pleaded allegations in the Second Amended Complaint in the light most favorable to Mr. Rady, that the allegations to support direct infringement are sufficient. The representations made by BCG's own principals imply ownership, partnership or a joint venture with De Beers in TRACR.  Such an interest means BCG is directly liable for infringement and Mr. Rady is entitled to elicit facts through discovery to support these allegations and inferences.

b.  *Willful infringement*

As Mr. Rady adequately pled allegations of direct infringement against BCG, he has also adequately pled willful infringement.[4]  Willful infringement requires "a degree of culpability which shows, through clear and convincing evidence, an intent to infringe willfully." *Mickowski*

---

to track food and help consumers avoid illegal, environmentally-damaging, or unethical products. ECF 30 at ¶19.   A reasonable inference that can be drawn from this characterization is that BCG and the World Wildlife Foundation both have some ownership in OpenSC, or at least share in any revenue generated from its license, sale, and/or use.  Given BCG's willingness to enter into some type of joint venture with the World Wildlife Foundation, it should come as no surprise that it would be willing to enter into a similar relationship with another client - De Beers.

[4]     BCG summarily addresses the willful infringement claim because it incorrectly posits that Mr. Rady "has not stated an underlying claim for direct or induced infringement."  ECF 44 at 7. BCG does not otherwise address willful infringement.

*v. Visi-Trak Corp.*, 36 F. Supp. 2d 171, 180 (S.D.N.Y. 1999), *aff'd*, 230 F.3d 1379 (Fed. Cir. 2000). "When an infringer receives actual notice of another's patent rights, the infringer bears an affirmative duty to determine whether he is infringing the patent at issue." *Id*.

The Second Amended Complaint is rife with well-pled allegations that BCG was well aware of Mr. Rady's patent rights, both prior to publication and post-issuance. For instance, Mr. Rady provided Sylvain Duranton, a Senior Partner, Managing Director, and Chief Executive Officer of BCG's Gamma business unit, significant details about his pending patent application in strict confidence. ECF 30 at ¶¶ 33-35. Mr. Duranton was so impressed that he sent Mr. Rady up the chain of command to discuss BCG's possible licensing of his technology and invention, where Mr. Rady further discussed his pending patent application and technology with BCG management. *Id*. at ¶¶ 36-42. Additionally, Mr. Rady received an anonymous whistleblower complaint from a BCG employee, claiming that "BCG [stole his] patent." *Id*. at ¶¶ 74-77. These allegations make clear that BCG had actual notice of Mr. Rady's patent rights, establish that BCG demonstrated an intent to willfully infringe, and show that BCG utterly failed to comply with its affirmative duty to determine whether it was infringing (and indeed continues to infringe) on Mr. Rady's patent.

c. *Induced infringement*

In addition to adequately pleading direct and willful infringement, Mr. Rady pled a viable claim for induced infringement against BCG. BCG argues that "Mr. Rady does not identify any action that BCG took to encourage *De Beers* to infringe the '250 Patent after that patent issued and BCG was aware of the patent." ECF at 4.[5] This assertion, however, is misplaced.

_____

[5]    BCG does not contend that the Second Amended Complaint is deficient in alleging that a third party – here, DeBeers - directly infringes the '250 patent.

Mr. Rady asserts that BCG took actions that encouraged De Beers' infringement of the '250 patent by developing the infringing technology on behalf of De Beers. As discussed *supra*, BCG clearly knew about Mr. Rady's technology, patent application, and issued patent. Notwithstanding this, BCG continued developing the infringed technology. When employees raised concern that BCG was infringing upon Mr. Rady's patent, BCG management told them to "keep quiet and carry on." ECF 30 at ¶ 75. BCG then went on to maintain a financial stake in TRACR and partner with De Beers. *Supra*. As such, the Second Amended Complaint more than adequately alleges that BCG encouraged infringement.

BCG repeatedly makes reference to "the time it was aware of Mr. Rady's patent." ECF 44 at Sec. II. In doing so, BCG appears to be invoking a willful blindness argument in an attempt to feign a lack of knowledge of Mr. Rady's patent. At a minimum, BCG appears to be attempting to push its knowledge of Mr. Rady's patent to the latest date possible in an effort to avoid liability. Such arguments have been explicitly rejected at all levels, from the Supreme Court to district courts. *See, e.g.*, *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 771, 131 S. Ct. 2060, 2072, 179 L. Ed. 2d 1167 (2011) ("Given the long history of willful blindness and its wide acceptance in the Federal Judiciary, we can see no reason why the doctrine should not apply in civil lawsuits for induced patent infringement under 35 U.S.C. § 271(b)."); *MPC Franchise, LLC v. Tarntino*, 826 F.3d 653, 660 (2d Cir. 2016) (stating that the willful blindness standard applies to claims of induced infringement); *SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 376 F. Supp. 3d 369, 390 (S.D.N.Y. 2019) ("Willful blindness is a permissible means of proving the knowledge element of induced infringement.").

Mr. Rady's Second Amended Complaint makes clear that De Beers directly infringes Mr. Rady's patent, that BCG took actions to encourage this infringement by developing the infringing

technology for the specific purpose of commercially selling or licensing it to its client, DeBeers, as well as the clients of De Beers, and that BCG acted with specific intent, *i.e.*, that BCG knew about the '250 patent and knew or should have known that its actions would induce infringement. It therefore follows that Mr. Rady's induced infringement claim should not be dismissed.

## IV.   <u>CONCLUSION</u>

For the reasons discussed above, Plaintiff Max Rady respectfully requests that BCG's Motion to Dismiss be denied.

Dated: New York, New York
      November 2, 2020          WHITEFORD, TAYLOR & PRESTON L.L.P

                  By: *<u>/s/ Kenneth M. Lewis</u>*
                     Kenneth M. Lewis

                  444 Madison Avenue, Fourth Floor
                  New York, NY 10022
                  (914) 761-8400
                  klewis@wtplaw.com

                  WHITEFORD, TAYLOR & PRESTON L.L.P.
                  Seven Saint Paul Street, Suite 1500
                  Baltimore, MD 21202-1636
                  (410) 347-8700
                  stiller@wtplaw.com
                  khroblak@wtplaw.com
                  Steven E. Tiller
                  Kevin G. Hroblak

                  *Attorneys for Plaintiff,*
                  *Max A. Rady*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 2, 2020, a true and correct copy of the foregoing

document is being filed and served via Electronic Case Filing (ECF) on all counsel of record who

have consented to electronic service, and served via electronic mail on all counsel listed below:

Kyle W.K. Mooney                    Christopher P. Borello
Morrison & Foerster LLP             Joshua D. Calabro
250 West 55th Street                Venable LLP
New York, New York 10019            127 Avenue of the Americas
kmooney@mofo.com                    New York, New York 10020
                                    cborello@Venable.com
and                                 jdcalabro@Venable.com

                                    Counsel for Defendant
                                    De BEERS UK LIMITED

Michael A. Jacobs
Morrison & Foerster LLP
425 Market Street
San Francisco, California 94105
mjacobs@mofo.com

Counsel for Defendant
THE BOSTON CONSULTING GROUP,
INC.

Dated:  November 2, 2020

                                    */s/ Kenneth M. Lewis*
                                    Kenneth M. Lewis