**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MAX A. RADY,

        Plaintiff,

           v.

THE BOSTON CONSULTING GROUP, INC.
and De BEERS UK LIMITED,

        Defendants.

Case No.: 1:20-cv-02285 (ALC)

Judge Andrew L. Carter, Jr.

---

## DEFENDANT DE BEERS UK LIMITED'S REPLY BRIEF IN SUPPORT OF ITS RULE 12(B)(6) MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

I.    Plaintiff ignores De Beers's arguments and case law concerning abstract ideas. .............. 1

II.   Plaintiff alleges no improvement to computers, so its cases are inapposite. ..................... 1

    A.    The claims' recitation of known components does not improve computers. ......... 1

    B.    The claims' invocation of a known blockchain does not improve computers. ............................................................................................... 3

    C.    Plaintiff misplaces reliance on cases involving improvements to computers. ............................................................................................... 4

III.  Plaintiff conflates nonobviousness and novelty with subject matter eligibility. ............... 6

IV.   The Court can and should resolve subject matter eligibility at this stage. .......................... 8

V.    The claims of the '250 patent raise preemption concerns. ................................................. 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018)................................................................................9

*Affinity Labs of Tex. v. DIRECTV, LLC*,
  838 F.3d 1253 (Fed. Cir. 2016)................................................................................7

*Ariosa Diags. Inc. v. Sequenom Inc.*,
  788 F.3d 1371 (Fed. Cir. 2015)................................................................................9

*Automated Tracking Sols., LLC v. Coca-Cola Co.*,
  223 F. Supp. 3d 1278 (N.D. Ga. 2016) ...................................................................5

*Automated Tracking Sols., LLC v. Coca-Cola Co.*,
  723 F. App'x 989 (Fed. Cir. 2018) .......................................................................4, 5

*BASCOM Glo. Int. Servs. v. AT&T Mob. LLC*,
  827 F.3d 1341 (Fed. Cir. 2016)................................................................................5

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018)................................................................................8

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*,
  778 F. App'x 882 (Fed. Cir. 2019) .......................................................................1, 6

*BSG Tech. LLC v. Buyseasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018)......................................................................2, 3, 10

*Bytemark, Inc. v. Masabi Ltd.*,
  No. 2:16-cv-00543-JRG-RSP,
  2018 U.S. Dist. LEXIS 222087 (E.D. Tex. Nov. 25, 2018) ...................................8

*CardioNet, LLC v. InfoBionic, Inc.*,
  955 F.3d 1358 (Fed. Cir. 2020)..............................................................................10

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
  880 F.3d 1356 (Fed. Cir. 2018)................................................................................4

*Crypto Research, LLC v. Assa Abloy, Inc.*,
  236 F.Supp.3d 671 (E.D.N.Y. 2017) ....................................................................4, 5

*Data Engine Techs. LLC v. Google LLC*,
  906 F.3d 999 (Fed. Cir. 2018).................................................................................4

*DDR Holdings, LLC v. Hotels.com*,
   773 F.3d 1245 (Fed. Cir. 2014)..............................................................7, 8

*Dynamic Applet Techs., LLC v. Mattress Firm, Inc*.,
   2018 U.S. Dist. LEXIS 160061 (E.D. Tex. Aug. 29, 2018) ........................9

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016)............................................................1, 6

*Enfish, LLC v. Microsoft Corp*.,
   822 F.3d 1327 (Fed. Cir. 2016)..................................................................4

*FairWarning IP, LLC v. Iatric Sys., Inc*.,
   839 F.3d 1089 (Fed. Cir. 2016)..................................................................8

*Finjan, Inc. v. Blue Coat Systems, Inc*.,
   879 F.3d 1299 (Fed. Cir. 2018)..................................................................4

*Graham v. John Deere Co. of Kansas City*,
   86 S. Ct. 684 (1966)..................................................................................6

*Intellectual Ventures I LLC v. Symantec Corp*.,
   838 F.3d 1307 (Fed. Cir. 2016)...........................................................6, 10

*Intellectual Ventures II LLC v. JP Morgan Chase & Co*.,
   No. 13-cv-3777 (AKH), 2015 U.S. Dist. LEXIS 56092
   (S.D.N.Y. Apr. 28, 2015)........................................................................6, 9

*Internet Patents Corp. v. Active Network, Inc*.,
   790 F.3d 1343 (Fed. Cir. 2015)..................................................................7

*Mayo Coll. Servs. v. Prometheus Labs. Inc*.,
   132 S. Ct. 1289 (2012)..............................................................................6,

*McRO, Inc. v. Bandai Namco Games Am. Inc*.,
   837 F.3d 1299 (Fed. Cir. 2016)................................................................10

*Ex Parte Praveen Jayachandran*,
   Appeal No. 2019-007020, Application No 15/294,272
   (P.T.A.B. May 13, 2020) ............................................................................3

*Sensormatic Elecs., LLC v. Wyze Labs, Inc.*,
   No. CV 19-1543-CFC, 2020 WL 5258439 (D. Del. Sept. 3, 2020) .........2

*Smart Sys. Inn., LLC v. Chicago Transit Auth.*,
   873 F.3d 1364 (Fed. Cir. 2017)..............................................................5, 7

*Thales Vis., Inc. v. U.S.*,
    850 F.3d 1343 (Fed. Cir. 2017)............................................................................5

*In re TLI Commc'ns LLC Patent Litig.*,
    823 F.3d 607 (Fed. Cir. 2016)...........................................................................7, 8

*Visual Memory LLC v. NVIDIA Corp.*,
    867 F.3d 1253 (Fed. Cir. 2017)............................................................................4

Plaintiff's opposition to De Beers's motion to dismiss offers nothing of substance beneath the rhetoric about his "highly complex system."  DE 44 at 11.  Plaintiff does not dispute that all tangible components of his claims—including a device that combined spectral and 3D scan data to identify assets—were known.  Nor does he allege any improvement to computers, focusing instead on adding intangible information to the known blockchain, which does not satisfy § 101.

I.      **Plaintiff ignores De Beers's arguments and case law concerning abstract ideas.**

Plaintiff fails to distinguish the cases cited by De Beers.  *First*, Plaintiff accuses De Beers of "overgeneraliz[ing]" the claims, contending that the claims contain details beyond collecting, processing, and storing information.  DE 44 at 1, 11, 17, 19, 22.  But so did every claim that Courts have invalidated for focusing on that patent-ineligible abstract idea.  *See Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1351-53 (Fed. Cir. 2016) (finding 394-word claim, "[t]hough lengthy," focused on collecting and manipulating information).

*Second*, Plaintiff truncates the abstract idea to "collecting, processing and storing data" (DE 44 at 11, 17, 22), omitting "to track physical items" and ignoring cases that found similar "tracking" claims ineligible.  DE 38 § III(A)(2); *see also Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 893 (Fed. Cir. 2019) ("The claimed advance is a method of tagging and tracking user traffic, which amounts to nothing more than the abstract idea of communicating information using a personalized marking[.]").  *Third*, Plaintiff concedes the invention amounts to a "ledger" (DE 44 at 1, 3, 11, 15), yet neglects to address the cases, including *Alice*, 134 U.S. at 2355, holding that concept ineligible.  DE 38 at 12-13; DE 44 at 7.

II.     **Plaintiff alleges no improvement to computers, so its cases are inapposite.**

    A.      **The claims' recitation of known components does not improve computers.**

Plaintiff notes that the claims require more than a "general purpose computer."  DE 44 at 17.  The Federal Circuit has "consistently held, however, that claims are not saved from

abstraction merely because they recite components more specific than a generic computer." *BSG Tech. LLC v. Buyseasons, Inc*., 899 F.3d 1281, 1286 (Fed. Cir. 2018).  Plaintiff also alleges that the invention "combines computers with as many as seven other hardware and software components." DE 44 at 14.  As an initial matter, Plaintiff relies on a list of components in claims 2 and 13  (*id.* at 17), which are not asserted in the second amended complaint (DE 30, "SAC").  And those claims require only "one"—not all—of the recited components.  Regardless, the number of components makes no difference, where, as here, patentee "does not claim to have invented" those components.  *Sensormatic Elecs., LLC v. Wyze Labs, Inc*., No. CV 19-1543-CFC, 2020 WL 5258439, at *6 (D. Del. Sept. 3, 2020).

In *Sensormatic*, patentee emphasized that its invention "contain[s] a number of specific features . . . capable of performing a number of functions." *Id.*  But the Court found the claims ineligible because the patent described the many features—"input capture devices, remote server computers, digital input recorders[,] remote viewing devices, . . . digital video management devices[,] . . . a sensor, an input component, a processor, memory, and a transmitter"—"as off-the-shelf, pre-existing computer components." *Id.* ("[T]he combination of those generic components does not constitute an inventive concept.").  Similarly here, Plaintiff does not dispute that all tangible components were known.  DE 38 § III(B).  The specification not only fails to disclose improved sensors or any new "spectral imager, range scanner, HD camera, [or] scale" (DE 44 at 17), it expressly relies on preexisting physical components.  DE 38 § III(B). And those components, *e.g*., "a storage device" and "a scale," merely perform their known functions, *i.e.,* "storing instructions" and "determin[ing] a mass."  DE 30 Ex. A at claims 1, 2.[1]

---

[1] Plaintiff also cites components that do not expressly appear in any claim, such as "miner" and "full" nodes (DE 38 at 15 n.8), which in any event were known.  DE 39-5 at 6 ("miners"); DE 30 Ex. A at 6:17-25 (full nodes "are similar" to known full nodes in Ex. H); Ex. H; *see also* Ex. G.

B.    __The claims' invocation of a known blockchain does not improve computers.__

Plaintiff's vague averments concerning improvements relate to the types of information stored on a blockchain.  DE 44 at 14 n.7.  Plaintiff again mischaracterizes the claims, which do not require, for example, logging "mass" and "3D space awareness photos" onto the blockchain. *Id.*  Even if they did, adding information to a blockchain does not improve computers.  *See Ex Parte Praveen Jayachandran*, Appeal No. 2019-007020, Appln. 15/294,272 (P.T.A.B. May 13, 2020) (DE 39-2 at 13-14) (claims "to tracking asset states in a blockchain and determining whether certain requirement criteria are met in this blockchain" ineligible because they did not "alter the computer itself in any structural way").  In *Jayachandran*, the "invention add[ed] additional information to the blockchain (e.g., an asset state and requirement criteria)."  DE 39-2 at 10.  Yet "this additional information [did not] actually change[] the manner in which the blockchain itself works."  *Id.*  Likewise, in *BSG* (which Plaintiff cites), the patent claimed "a 'self-evolving generic index' for organizing information stored in a database."  899 F.3d at 1283 ("For instance, items in the database could be classified using the 'color' parameter, while each item in the database will have a specific color value like 'red' or 'blue.'").  *Id.*  The invention "result[ed] in better user input" and "improve[d] the quality of the information added to the database."  *Id.* at 1286-88.  But the Court held that "an improvement to the information stored by a database is not equivalent to an improvement in the database's functionality."  *Id.* at 1288.  Similarly, in *Elec. Power*, 830 F.3d at 1355, the Court reaffirmed that "selecting information, by content or source, for collection, analysis, and display" fails to confer eligibility where "nothing in the patent contains any suggestion that the [components] needed for that purpose are anything but readily available."  *Id.* at 1355-56 (explaining that manipulating "two or more types of information" does not change the outcome).  Here too, the claims' recitation of both "spectral analysis data and 3D scan data," for example, makes no difference because the specification

relies on a prior art disclosure of hardware for generating and using both types of data to identify physical objects.  DE 38 at 10-11; *see also Automated Tracking Sols., LLC v. Coca-Cola Co.*, 723 F. App'x 989, 995 (Fed. Cir. 2018) (finding claim to "collecting data from a particular source, RFID transponders, and analyzing the data" ineligible, where transponders were known).

Plaintiff also contends that the invention obviates "the need for a central authority."  DE 44 at 20.  But that comes directly from the blockchain prior art that the '250 patent incorporates by reference and thus cannot confer eligibility.  DE 39-5 at 1-2 ("The main feature that differentiates the blockchain from all other distributed databases is its completely decentralized nature, which escapes the presence of a trusted central authority.").

## C.   Plaintiff misplaces reliance on cases involving improvements to computers.

Despite failing to allege any improvement to computers, Plaintiff relies almost exclusively on cases involving such an improvement.  In *Enfish, LLC v. Microsoft Corp*., 822 F.3d 1327, 1339 (Fed. Cir. 2016), the claims recited at a "specific type of data structure . . . to improve the way a computer stores and retrieves data in memory."  In *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1009-10 (Fed. Cir. 2018), the claim required a "specific interface and implementation for navigating complex three-dimensional spreadsheets using techniques unique to computers."  In *Visual Memory LLC v. NVIDIA Corp*., 867 F.3d 1253, 1256, 1259 (Fed. Cir. 2017), the claim recited an "improved computer memory system" that "self-configure[d]" based on processor type.  In *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc*., 880 F.3d 1356, 1358-59 (Fed. Cir. 2018), the claims recited improved interfaces for electronic devices with small screens that allowed users to more quickly access the device's data.  In *Finjan, Inc. v. Blue Coat Systems, Inc*., 879 F.3d 1299, 1303 (Fed. Cir. 2018), the claim related to "a method of providing computer security by scanning a downloadable and attaching the results of that scan to the downloadable itself in the form of a 'security profile.'"  In *Crypto*

-4-

*Research, LLC v. Assa Abloy, Inc*., 236 F.Supp.3d 671, 675 (E.D.N.Y. 2017), the claims related
to "finding values in a one-way chain that facilitates computation of other values in [the] chain."
They "did not merely involve the encryption of data, but rather . . . a specific method of doing
so" that improved computers by reducing "necessary storage." *Id.* at 684 (citation omitted).[2]

Plaintiff further relies on inapposite cases involving claims to an unconventional
arrangement of hardware.  In *BASCOM Glo. Int. Servs. v. AT&T Mob. LLC*, 827 F.3d 1341, 1350
(Fed. Cir. 2016), the claims required "installation of a filtering tool at a specific location, remote
from the end-users."  In *Thales Vis., Inc. v. U.S*., 850 F.3d 1343, 1345, 1348-49 (Fed. Cir. 2017),
the claims required an "unconventional configuration of sensors," including "a first inertial
sensor mounted on the tracked object," *e.g*., helmet; "a second inertial sensor mounted on the
moving platform," *e.g*., vehicle; and "an element that uses the data from the two inertial sensors
to calculate the orientation of the tracked object relative to the moving platform."  Prior art
lacking that arrangement used earth (rather than the vehicle) as the reference frame.  *Id.* at 1345.
Courts rejected reliance on *BASCOM* and *Thales* where, as here, the claims do not require an
unconventional "configuration" of hardware.  *Automated Tracking*, 223 F. Supp. 3d 1278, 1291-
92 (N.D. Ga. 2016), *aff'd*, 723 F. App'x at 993-94.  The claims do not require, *e.g*., "hundreds[]
or even thousands of nodes."  DE 44 at 2.  Nor do they require any particular arrangement of

---

[2] Although Plaintiff alludes to "cryptographic hash[es]" generally (DE 44 at 11), he does not
contend that the claims recite a new method of encrypting data, let alone a new method that
"reduces the necessary storage or computation."  236 F.Supp.3d at 675.  Nor could he.  The
claims do not contain cryptography limitations, and the specification invokes known
cryptography.  DE 1:7-10, 7:46-57 (incorporating by reference Ex. G in connection with a
discussion of "cryptographic hashes"); Ex. G at 2 (describing a known "blockchain as a database
modeled by a linear sequence of blocks, each one containing cryptographic hashes"); *see Uniloc
USA, Inc. v. Amazon.com, Inc*., 243 F. Supp. 3d 797, 810-11 & n.8 (E.D. Tex. 2017) (finding
claims requiring "cryptographic hash" ineligible at pleadings stage in view of techniques
disclosed in patent incorporated by reference into asserted patent), *aff'd*, 733 F. App'x 1026
(Fed. Cir. 2018); *Smart Sys. Inn., LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1374 & n.9
(Fed. Cir. 2017) ("A hash identifier is a generic and routine concept . . . .).

nodes, much less an unconventional one.  Claims 1 and 12—the only claims asserted in the SAC—just require "[a] network node."  Unasserted claim 22 requires "a plurality of network nodes co-located at a field location."  The SAC does not allege anything inventive about "co-locat[ing]" nodes.  Nor could it, as prior art incorporated into the '250 patent expressly discloses "a network with mobile nodes that . . . are able to interact with neighboring nodes through short-range communication technologies."  DE 39-5 at 2.  And the sole mention of "co-located" nodes in the specification merely parrots the claim language.  DE 30 Ex. A at 3:1-2.

## III.   Plaintiff conflates nonobviousness and novelty with subject matter eligibility.

Citing *Graham v. John Deere Co. of Kansas City*, 86 S. Ct. 684, 694 (1966), Plaintiff urges the Court to deny De Beers's motion based on the alleged "long-felt but unsolved need to solve the problem addressed by the invention[] and  . . . the failure of others to solve the problem."  DE 44 at 23.  But *Graham* addressed obviousness under § 103.  That case had nothing to do with § 101, the only subject of De Beers's motion.  Plaintiff's reliance on the supposed "novel[ty]" (DE 44 at 1) of his invention fails for the same reason.  Courts have consistently upheld the distinction between subject matter eligibility under § 101 and novelty or nonobviousness under § 102 or § 103.  *See Mayo Coll. Servs. v. Prometheus Labs. Inc*., 132 S. Ct. 1289, 1304 (2012) (rejecting "invitation to substitute §§ 102, 103, and 112 inquiries for the . . . inquiry under § 101"); *Intellectual Ventures I LLC v. Symantec Corp*., 838 F.3d 1307, 1315 (Fed. Cir. 2016) ("[The] finding that . . . prior art references do not disclose all the limitations of or render obvious the asserted claims does not resolve the [§ 101] question."); *Bridge*, 778 F. App'x at 893 (finding claims ineligible "regardless of whether the use of a particular HTTP header to perform that abstract idea was novel"); *Intellectual Ventures II LLC v. JP Morgan Chase & Co*., No. 13-cv-3777 (AKH), 2015 U.S. Dist. LEXIS 56092, at *31-*32 (S.D.N.Y. Apr. 28, 2015) (finding the argument that a patent "improves upon prior art . . . is merely a claim of

alleged novelty, which is an entirely separate and unrelated question than whether the claimed method amounts to an abstract idea").

Plaintiff's only case allegedly to the contrary, *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348-49 (Fed. Cir. 2015), affirmed a decision finding claims ineligible under § 101 at the pleadings stage, in part because they recited conventional steps.  The Court there did not endorse Plaintiff's theory that subject matter eligibility requires the same inquiry (and fact-finding) as obviousness.  Plaintiff relies on *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607 (Fed. Cir. 2016) for his assertion that a claim satisfies § 101 if it "solves long felt problems."  DE 44 at 2 & n.2.  But the Court in *TLI* found claims ***ineligible*** even though they purported to "solve [a] problem."  823 F.3d at 609-10.  Plaintiff also cites *DDR Holdings, LLC v. Hotels.com*, 773 F.3d 1245 (Fed. Cir. 2014), "for [its] discussion of claims that resolved an 'existing problem' in the applicable industry of which the patent operated."  DE 44 at 23.  Plaintiff omits the dispositive aspect of *DDR*—the "applicable industry," *i.e.*, computers.   The Court in *DDR* found claims eligible because they "overc[a]me a problem specifically arising in the realm of computer networks" with a new hybrid website that prevented users from being redirected to an advertiser's site.  773 F.3d at 1257-58.  As the *TLI* and *Affinity* cases cited by Plaintiff make clear, "*DDR* has no applicability" where, as here the claims do not address problems "unique to the Internet."  *TLI*, 823 F.3d at 613 (citation omitted); *Affinity Labs of Tex. v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016) ("*DDR Holdings* dealt with a patent that required doing something *to* a web page, not simply doing something *on* a web page[.]") (emphasis original); *see Smart Sys.*, 873 F.3d at 1375 ("*DDR Holdings* does not apply when, as here, the asserted claims do not 'attempt to solve a challenge particular to the Internet.'") (citation omitted).

Plaintiff admits that his invention does not solve any problem unique to computers by contending that it addresses a general "[c]ounterfeiting [p]roblem . . . plaguing many industries," including "pharmaceuticals," "electronics," "automobiles," and "gemstones."  DE 44 at 2-3, 11 n.6.  Plaintiff does not dispute that this "long standing" problem existed before computers.   DE 44 at 2, 24; *see* DE 38 at 13.  The SAC underscores that the inventor faced a problem relating to counterfeiting (DE 30 at ¶¶ 1-4, 10), not drawbacks and deficiencies in any hardware, such as supposedly "specialized sensors" (DE 44 at 17).   Because the problem purportedly addressed by Plaintiff's invention relates to counterfeiting and not computers, it makes no difference under § 101 whether the invention solved that problem.  *Bytemark, Inc. v. Masabi Ltd.*, No. 16-cv-00543, 2018 U.S. Dist. LEXIS 222087, at *26 (E.D. Tex. Nov. 25, 2018) (claims ineligible under § 101 even though they "may have reduced . . . prevalence of counterfeit tickets"), *adopted*, 2019 U.S. Dist. LEXIS 227026 (E.D. Tex. Feb. 7, 2019), *aff'd*, 792 F. App'x 952 (Fed. Cir. 2020).

## IV.    The Court can and should resolve subject matter eligibility at this stage.

Plaintiff contends that "granting the motion to dismiss would be premature" in view of "factual determinations [that] need to be made."  DE 44 at 25.  But Plaintiff does not point to any such factual determination.  And Plaintiff's own cases confirm that subject matter eligibility can be resolved as a matter of law where, as here, patentee "admitted that [the claimed components] and the functions they perform existed for years before his patent."  *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1370 (Fed. Cir. 2018) ("These conventional limitations . . ., combined with limitations of analyzing and comparing data and reconciling differences between the data, 'fail to transform th[e] abstract idea into a patent-eligible invention.'") (citation omitted); *TLI*, 823 F.3d at 613-14 (holding claims ineligible "at the motion to dismiss stage" because the Court needed "only look to the specification" to confirm the lack of an inventive concept); *see* DE 38 § III(B).

Plaintiff further cites *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed.

-8-

Cir. 2016), in support of its theory that the Court cannot resolve § 101 at this stage.  DE 44 at 24.

But the Federal Circuit in *FairWarning* affirmed the decision granting a motion to dismiss.

Plaintiff also misplaces reliance on *Aatrix Software, Inc. v. Green Shades Software, Inc*., 882

F.3d 1121, 1125 (Fed. Cir. 2018), where the Federal Circuit reversed the denial of motion for

leave because the proposed amended complaint alleged "improve[ments] [to] the workings of the

computer," *e.g*., allow[ing] data to be imported from an end user application without needing to

know proprietary database schemas and without having to custom program the form files to work

with each outside application," which "save[d] storage space both in the users' computers' RAM

. . . and hard disk."  *Id.* at 1127 (citing allegations that invention reduced "thrashing," "which

slowed down prior art systems").  Here, Plaintiff has already amended his complaint (twice), yet

still fails to allege any improvement to computers.  Moreover, the defendant in *Aatrix* "conceded

that nothing in the specification describes [claimed features] as conventional" (*id.* at 1129),

whereas here the specification describes the components as conventional.[3]  DE 38 § III(B).

## V.    The claims of the '250 patent raise preemption concerns.

Plaintiff argues that the claims implement a "specific protocol" and thus do not

"preempt" all use of the abstract idea.  DE 44 at 12, 22 (citation omitted).  *First*, although

preemption concerns provide "the basis for the judicial exceptions to patentability . . ., the

absence of complete preemption does not demonstrate patent eligibility."  *Ariosa Diags. Inc. v.*

*Sequenom Inc*., 788 F.3d 1371, 1379 (Fed. Cir. 2015).  And where, as here, "a patent's claims are

---

[3] The *Data Distrib*., *Nomadix*, and *Dynamic Applet* district court cases cited by Plaintiff did not and could not overturn Federal Circuit precedent permitting resolution of subject matter eligibility at the pleadings stage.  Those district court decisions focused on claim construction considerations.  *See, e.g., Dynamic Applet Techs., LLC v. Mattress Firm, Inc*., 2018 U.S. Dist. LEXIS 160061, at *19-20 (E.D. Tex. Aug. 29, 2018) ("The parties' disagreements revolving around [five] claim terms indicate that claim construction is necessary.").  Here, Plaintiff does not identify a single term requiring construction.  Nor does the Patent Office's issuance of the '250 patent (DE 44 at 24) preclude holding its claims ineligible on a motion to dismiss.

deemed only to disclose patent ineligible subject matter under the *Mayo*[/*Alice*] framework, . . . preemption concerns are fully addressed and made moot." *Id.*; *see also Symantec*, 838 F.3d at 1321 ("A narrow claim directed to an abstract idea . . . is not necessarily patent-eligible . . . ."); *BSG Tech.*, 899 F.3d at 1291 ("Although BSG Tech narrowed its claims to specific database structures, those structures are well-understood and conventional.").

*Second*, the claims lack the specificity that Plaintiff implies.  For example, Plaintiff refers to "diamond[s]" fifty times throughout its brief.  But not a single claim of the '250 patent mentions a diamond.  The claims relate to tracking a "physical item" generally, and, according to Plaintiff, apply to "many industries," including "pharmaceuticals," "electronics," and "automobiles."  DE 44 at 2-3, 11 n.6.  The claims here thus preempt more than the claims in Plaintiff's case law, such as *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016), where claims solved a narrow problem (automating lip synchronization for animated characters), with rules implemented "in a specific way: as a relationship between sub-sequences of phonemes, timing, and the weight to which each phoneme is expressed visually at a particular timing."  *Id.* at 1315.  Plaintiff similarly misplaces reliance on *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1368 (Fed. Cir. 2020), where the claims related to a specific "cardiac monitoring device . . . that detects beat-to-beat timing of cardiac activity, detects premature ventricular beats, and determines the relevance of the beat-to-beat timing to atrial fibrillation[.]"[4]

\* \* \*

For the reasons above and in De Beers's opening brief, its motion should be granted.

---

[4] Plaintiff contends that his claims satisfy § 101 because the accused Tracr product won an award.  Br. at 23 n.10.  *First*, Plaintiff failed to include that evidence in the SAC, so the Court cannot consider it.  *Second*, no Court has held that the "new[ness]" of the accused product (*id.*) salvaged patentee's abstract claims under § 101.  Plaintiff must point to a plausible allegation that the ***claims of the '250 patent***—not Tracr—contain an inventive concept.  De Beers's "leadership" and "social[] responsibil[ity]" have nothing to do with Plaintiff's claims.  *Id.*  And, Plaintiff fails to tie his allegations about Tracr to an improvement in computers.  *See* Section II.

Dated: November 16, 2020

Respectfully submitted,

/s/ Christopher P. Borello
Christopher P. Borello
Joshua D. Calabro
VENABLE LLP
1270 Avenue of the Americas
New York, New York 10020
Telephone: (212) 218-2100
Facsimile: (212) 218-2200
Email: cborello@venable.com
Email: jdcalabro@venable.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 16, 2020, a copy of the foregoing will be served on counsel of record for all parties via ECF.

/s/ Christopher P. Borello
Christopher P. Borello