# WHITEFORD, TAYLOR & PRESTON L.L.P.

SEVEN SAINT PAUL STREET
BALTIMORE, MARYLAND  21202-1636

MAIN TELEPHONE (410) 347-8700
FACSIMILE (410) 752-7092

DELAWARE*
DISTRICT OF COLUMBIA
KENTUCKY
MARYLAND
MICHIGAN
NEW YORK
PENNSYLVANIA
VIRGINIA

WWW.WTPLAW.COM
(800) 987-8705

STEVEN E. TILLER
DIRECT LINE  (410) 347-9425
DIRECT FAX  (410) 223-4325
stiller@wtplaw.com

January 25, 2022

**Via ECF**
The Honorable Andrew L. Carter, Jr.
U.S. District Court For the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 1306
New York, New York 10007

   Re: ***Rady v. Boston Consulting Group, LLC & De Beers UK Ltd.***
      ***Case No.:  1:20-cv-02285-ALC***

Dear Judge Carter:

  We represent Plaintiff Max Rady ("Mr. Rady") in the above-mentioned matter. On November 2, 2020, Mr. Rady filed oppositions (the "Oppositions") to motions to dismiss filed by the Defendants Boston Consulting Group, LLC ("BCG") and De Beers UK Ltd. ("De Beers"). *See* ECF 44 & 45. During the year since the filing of the Oppositions, Mr. Rady has discovered additional material information refuting Defendants' legal arguments.  Pursuant to the Court's Individual Rules of Practice, Mr. Rady respectfully requests that the Court consider this newly discovered information in further support of his Oppositions to Defendants' motions to dismiss.

  **I.** **Brief Summary of Factual Allegations Made in Second Amended Complaint**

  Mr. Rady started his employment with BCG as a senior engineer in 2016. While employed, Mr. Rady shared with BCG, on a strictly confidential basis, details about an invention he independently developed and claimed in his then unpublished pending patent application to potentially assist BCG with the development of a diamond provenance product (now known as TRACR) that De Beers had commissioned BCG to develop. At the time BCG sought this information from Mr. Rady, it was long struggling to design a solution to fulfill the needs of De Beers. However, shortly after Mr. Rady disclosed his proprietary information to BCG, subject to a confidentiality agreement, BCG misappropriated the information and announced it completed development of TRACR.  De Beers then promptly began advertising TRACR's use and began sharing it with diamond industry participants worldwide.  When Mr. Rady approached BCG about the improper disclosure and use of his invention without his permission, he was summarily fired from BCG, notwithstanding prior exemplary reviews.  His firing and BCG's misuse of his invention led to an anonymous complaint being sent to De Beers about BCG's misappropriation and improper use of Mr. Rady's invention in developing TRACR.

*\*Whiteford, Taylor & Preston L.L.P. is a limited liability partnership.  Our Delaware offices are operated under a separate Delaware limited liability company, Whiteford, Taylor & Preston L.L.C.*

Honorable Andrew L. Carter, Jr.
January 25, 2022
Page 2

Mr. Rady's pending patent application eventually issued as a patent in November 2019, including claims on which TRACR infringes. As a result, Mr. Rady filed suit on March 13, 2020 for patent infringement against both BCG and De Beers. His complaint includes claims for breach of contract and misappropriation of trade secrets against BCG. *See* ECF 1.[1]

## II.   Brief Summary of Pending Arguments and Applicable Law

Despite the USPTO's review and issuance of his patent, De Beers' motion to dismiss asserts that Mr. Rady's patent claims are nothing but an abstract idea and, thus, are invalid under Section 101 of the U.S. Patent Act, 35 U.S.C. § 101.  BCG adopts De Beers' Section 101 argument, but also moves for dismissal of the patent infringement claims asserted against it on the additional ground that BCG has not been involved in TRACR or any other infringing technology since the patent was issued, and therefore, cannot be held liable for patent infringement.[2]

With respect to De Beers' motion to dismiss, which was joined by BCG, the USPTO has issued guidance that defines three classes of abstract ideas: mental processes, mathematical concepts, and methods of organizing human activity.  As Mr. Rady argued in his Opposition, his patent does not merely claim an abstract idea.  Even if, however, this Court determines that the patent merely claims an abstract idea, the patent can nonetheless still be valid if the elements of the patent "transform the nature of the claim into a patent-eligible application." *Alice Corp. Pty Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). In deciding whether the patent transforms the claim into patent eligible subject matter, a court must "search for an inventive step," *id.*, and that effecting an improvement in a technology or technical field can be indicative of that inventive step.  *Id*. at 2359.  In deciding whether an inventive step is claimed, courts may look to considerations analogous to those of Sections 102 and 103 of the Patent Act regarding novelty and obviousness, *see Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1347 (Fed. Cir. 2015), including (i) the commercial success of the invention, (ii) the long-felt but unsolved need to solve the problem addressed by the invention, and (iii) the failure of others to solve the problem.  *See Graham v. John Deere Co. of Kansas City*, 86 S. Ct. 684, 694 (1966); *see also DDR Holdings, LLC v. Hotels.com*, 773 F.3d 1245, 1248 (Fed. Cir. 2014); *BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1351 (Fed. Cir. 2016) (discussing claims that resolved an "existing problem" in the applicable industry).

## III.   Recent Facts Offered in Support of Plaintiff's Oppositions to Motions to Dismiss

### a. *New Information Supports Mr. Rady's Argument that his Patent is Valid*

As noted above, it is Mr. Rady's position that his patent does ***not*** claim a mere "abstract idea," and thus, the Court need not analyze whether the claimed technology constitutes an

---

[1] After discussions between counsel for Mr. Rady and De Beers regarding the proper De Beers entity leveraging the TRACR technology, Mr. Rady filed an amended complaint on May 21, 2020.  *See* ECF 12. A second amended complaint was later filed on September 4, 2020.  *See* ECF 30.

[2] Plaintiff's claims for trade secret misappropriation and breach of contract against BCG are not subject to motions.

Honorable Andrew L. Carter, Jr.
January 25, 2022
Page 3

"inventive step," under the above legal framework. But, even if this Court were to reach the issue, new information obtained by Mr. Rady further reveals that even De Beers, despite the position it has taken in this litigation, agrees that Mr. Rady's patented technology comprises an inventive step, such that it is patentable. In this regard, De Beers continues to publicly tout the TRACR technology as being far more innovative and groundbreaking than the adoption of a mere abstract idea. As an example, on November 30, 2020, De Beers (after submitting its reply brief in further support of its motion to dismiss) published its "2030 goals,"[3] which prominently advertised that by:

> 2030 [De Beers] will record the majority (by value) of [its] annual production [of diamonds] on Tracr™, our ***ground-breaking technology*** platform built on blockchain that provides assurance of the provenance and authenticity of natural diamonds throughout the entire diamond value chain.

Touting TRACR as a "ground-breaking technology platform" reveals De Beers' true sentiment toward Mr. Rady's patented technology: it is a successful solution to a long-felt, but unmet, problem; not merely the adoption of an abstract idea.[4] Indeed, this representation is consistent with statements made by Bruce Cleaver ("Mr. Cleaver"), De Beers' CEO, who has repeatedly stated publicly that TRACR was extremely difficult to develop, and will allow the diamond industry to respond to the changing expectations of consumers and the evolving perceptions of what is required to strengthen confidence in its products. In this regard, and further demonstrating the cutting-edge nature of the technology created by Mr. Rady, Mr. Cleaver, on January 16, 2018, admitted the challenges faced in the diamond industry that De Beers could not have overcome without Mr. Rady's groundbreaking technology:[5]

> De Beers is running a pilot scheme using blockchain to create a virtual ledger of diamond sales. The technology made famous by cryptocurrency is also seen as having the potential to reshape industries from finance to retailing. It will enable De Beers to show transactions to all participants while keeping their identities and the value of sales hidden …. While blockchain technology offers a way to overcome some of these stumbling blocks, obstacles remain. Rough diamonds can be cut into multiple polished stones, and De Beers … hasn't yet worked out how to ensure the same stone is digitally tracked. We've spent a lot of time thinking about how you can triangulate the polished back to the rough … That's the area that's going to require the most amount of work.

---

[3] *See, https://www.debeersgroup.com/~/media/Files/D/De-Beers-Group-V2/documents/sustainability-and-ethics/ building-forever-goals-summary-2030.pdf*) (last visited January, 21, 2022) (emphasis added).

[4] *See, https://www.rivistaitalianadigemmologia.com/en_GB/2021/06/10/tracciare-tutti-i-diamanti-entro-il-2030-lalleanza-tra-de-beers-e-alrosa-sulla-blockchain-alza-lasticella-della-trasparenza/* (last visited January 21, 2022) (further promoting De Beers' 2030 goals regarding TRACR).

[5] *See* Thomas Beishuvel, *Diamond Trade Turns to Technology That Keeps Bitcoin Anonymous*, BLOOMBERG.COM (Jan. 16, 2018, https://www.bloomberg.com/news/articles/2018-01-16/diamond-trade-turns-to-technology-that-keeps-bitcoin-anonymous) (last visited January 21, 2022).

Honorable Andrew L. Carter, Jr.
January 25, 2022
Page 4

Mr. Cleaver's statements not only confirm the challenges facing the diamond industry but also confirm that two days prior to BCG requesting an electronic copy of Mr. Rady's then pending patent application, it did not have a solution to either uniquely identify or digitally track each diamond, nor match polished diamonds back to the rough stones from which they were cut; problems which Mr. Rady's patented technology solves.

De Beer's admissions not only highlight the glaring inconsistency between its briefing in this case and its public representations, but also reveal that the Defendants are aligned and agree with Mr. Rady that his patented technology is far from the mere adoption of an abstract idea. Indeed, in June of 2019, BCG stated that TRACR fixes an industry problem: "Right now, for instance, the lack of a reliable way to identify and authenticate diamonds at scale could allow fraudulent actors to use the same stone as collateral for multiple loans."[6] Mr. Rady's technology, however, fixes this industry problem, as BCG concedes, by recording "each diamond by its unique identifier."[7]

This newly discovered information bolsters the arguments made in the Oppositions, supports the allegations of Mr. Rady's Second Amended Complaint, and leads to the conclusion that Mr. Rady's patent is indeed valid. TRACR—the embodiment of Mr. Rady's patent—represents a dramatic improvement over the then-existing technology available to the diamond industry and, thus, is an "inventive step" over any abstract idea that De Beers contends may be claimed by the patent.

### b. Recent Discoveries Regarding the Expanded Use of Mr. Rady's Invention Demonstrate the Technology's Commercial Success and, thus, Patentability

Mr. Rady has also recently discovered new information that reveals his patented technology is growing in its use to new and ever-expanding industries, not just the diamond industry. A recently-formed entity called Origyn is unabashedly utilizing Mr. Rady's proprietary technology in other industries. Origyn was founded by Mike Schwartz ("Mr. Schwartz"), who was one of BCG's leading partners on project Midnight, which later became known as TRACR.[8] In a video dated October 5, 2020, only recently discovered by Mr. Rady, Mr. Schwartz explains that Origyn uses TRACR to authenticate valuable and luxury goods—and, more alarmingly, that it will continue to use the technology with "other items" and is "already working with a number

---

[6] *See* https://www.bcg.com/publications/2019/investor-guide-blockchain-fraud-and-loss-prevention (last visited January 21, 2022).

[7] (*See* footnote 6 – https://www.bcg.com/publications/2019/investor-guide-blockchain-fraud-and-loss-prevention (last visited January 21, 2022).

[8] While Mr. Rady does not know the nature of the relationship between BCG and Mr. Schwartz, it is suspected that some relationship exists between BCG and Origyn, the nature and extent of which will likely be the subject of discovery. A relationship between the two entities would contradict BCG's argument that it no longer uses or practices the TRACR technology following the issuance of Mr. Rady's patent.

Honorable Andrew L. Carter, Jr.
January 25, 2022
Page 5

of industry leaders" to find additional (infringing) uses.[9] In the description accompanying this video, Origyn states:

> Origyn has developed new intelligent technologies that allow manufacturers to generate a tamperproof, uncounterfeitable digital twin of a physical object. For the first time in history, the object itself constitutes its own unique identity and serves as proof of authenticity, via its own biometry.[10]

Mr. Schwartz, in the video, also acknowledged his work on TRACR, declaring that after the success of TRACR in authenticating and tracing diamonds, Origyn has been able to leverage this same technology to authenticate luxury goods, such as Swiss luxury watches, which Mr. Schwartz estimates to be a $35 billion market. This newly discovered evidence again bolsters Mr. Rady's Opposition regarding the adoption and commercial success of Mr. Rady's invention, and thus, goes to support his position that the patent is valid in light of Section 101.

### IV.  Conclusion

Mr. Rady respectfully requests that the Court consider this newly discovered and material information in support of his Opposition to Defendants' motions to dismiss. Even without the benefit of any discovery, the veracity of Mr. Rady's claims continue to shine through the smoke and mirrors presented by Defendants' motions to dismiss. Additional discovery will no doubt shed further light on these issues.

Should the Court have any questions, please do not hesitate to contact me.

Respectfully submitted,

*/s/ Steven E. Tiller*

Steven E. Tiller

cc:  *All Counsel of Record via E-Filing*

---

[9]  *See* "Origyn: The Ultimate Solution Against Luxury Counterfeits," YOUTUBE.COM (Oct. 5, 2020, https://www.youtube.com/watch?v=Ude-QHk2C8A) (last visited Jan. 21, 2022) (Schwartz: "TRACR was devised to implement provenance of diamonds for sustainability and ethically sourced assets through the value chain and other industry players joined that platform. Since that time, I was always looking for other asset classes to leverage the same kind of benefits. Origyn, like TRACR, is concerned with provenance and authenticity and heritage of real-world physical objects. In the first instance, luxury goods, in particular luxury watches, Origyn allows us to uniquely identify and authenticate luxury watches and soon other items as well. We're already working with a number of industry leaders.….") (transcribed by counsel).

[10]  *Id.*