

VENABLE LLP | 1290 AVENUE OF THE AMERICAS
20TH FLOOR | NEW YORK, NY 10104
T +1 212.218.2100  F +1 212.218.2200  Venable.com

February 2, 2022

**Christopher P. Borello**
T 212.218.2574
F 212.218.2200
CBorello@Venable.com

<u>*VIA ECF*</u>

Hon. Andrew L. Carter, Jr.
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 1306
New York, NY 10007

Re:   *Rady v. Boston Consulting Group, LLC & De Beers UK Ltd.*,
       Case No.: 1:20-cv-02285-ALC

Dear Judge Carter:

We represent Defendant De Beers UK Limited ("De Beers") and write in response to Plaintiff's January 25, 2022 letter purporting to submit "newly discovered information" in opposition to De Beers's Motion to Dismiss Under 35 U.S.C. § 101 (DE 37).  *See* DE 53 at 1. [1]

As an initial matter, Plaintiff's letter is improper because Plaintiff neither sought nor obtained leave to file a sur-reply.  Individual Practices § 2(B).  De Beers respectfully requests that, if the Court considers Plaintiff's letter, it also consider this response.

Plaintiff's letter contains nothing new.  Instead, it merely rehashes arguments from Plaintiff's opposition to De Beers's motion, citing statements from as early as 2018 (years before this case began) regarding De Beers's Tracr platform and allegedly related products.  As De Beers explained in its reply brief, Plaintiff did not include this information in its second amended complaint, so it cannot be considered at this stage.  *See* DE 48 at 10 n.4.  Nor does Tracr have any relevance to the issue raised by De Beers's motion—the subject matter eligibility of the claims of Plaintiff's U.S. Patent No. 10,469,250 ("the '250 patent").  Of the thousands of decisions on § 101, Plaintiff fails to identify a single one where the Court even considered, let alone relied on, evidence concerning the product accused of infringing the patent.  Courts resolve subject matter eligibility by comparing the claims of the asserted patent with the claims of patents that have been held ineligible in other cases.  *See* DE 38 at 2 (citing cases).  They do not and cannot decide this issue based on the accused product.[2]

---

[1] Boston Consulting Group joined in De Beers' motion to dismiss under Section 101 (DE 41) and joins in this response to Plaintiff's January 25 letter.

[2] Plaintiff urges the Court to consider factors underlying the § 103 obviousness inquiry, including "the commercial success of the invention."  DE 53 at 2.  Plaintiff's authority, *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1347-48 (Fed. Cir. 2015), merely drew on general "rules of patentability" in finding claim elements conventional in view of the

**VENABLE | Fitzpatrick**

Hon. Andrew L. Carter, Jr.
February 2, 2022
Page 2

Moreover, the developments since briefing closed only further support De Beers's motion, as Courts have continued to find claims analogous to those here ineligible.

For example, the claims at-issue in *Management Science Assocs. v. Datavant, Inc*., 510 F. Supp. 3d 238, 242-43 (D. Del. 2020) related to systems and methods in which a computer receives and processes a plurality of data elements identifying an individual, like multiple types of data are used to identify a physical item in the claims of the '250 patent. The claims in *Management Science* required "generat[ing] a token based at least partially on the plurality of data elements and a client tag uniquely identifying the client" (*id*.), like the claims of the '250 patent recite determining a "unique signature" from spectral analysis data and 3D scan data (*see* DE 30-1 at cl. 1). The *Management Science* claims also recited "match[ing] the token . . . to at least one other token in a database" (510 F. Supp. 3d at 242-43), like the claims here require "determin[ing] a match with features defined in the previously recorded unique signatures" (DE 30-1 at cl. 1). And the claims in *Management Science* required "linking" the record and token to "at least one other . . . record in at least one data storage device" (510 F. Supp. 3d at 242-43), like the '250 patent claims require "record[ing] the instance of the physical item to the blockchain in response to the determining whether the instance is previously recorded" (DE 30-1 at cl. 1). The Court in *Management Science* held that the patent claims were directed to ineligible subject matter in violation of § 101 at the pleadings stage because they "simply take the abstract idea of using a client tag in the collection, labeling, and manipulation of data and apply that idea with generic computers . . . ." 510 F. Supp. 3d at 249, 250 (explaining that an unconventional client tag does not render the claims eligible because the tag is part of the abstract idea itself). Likewise, the '250 patent relies on undisputedly conventional hardware, including a known imaging device that determines spectral analysis data and 3D scan data "simultaneously" to identify materials. DE 38 at 10-11.

Similarly, in *Universal Secure Registry LLC v. Apple Inc*., 10 F.4th 1342, 1351-53 (Fed. Cir. 2021), the Court held that claims directed to "an electronic ID device that includes a

---

specification of the patent-in-suit. *See Uniloc USA, Inc. v. Amazon.com, Inc*., 243 F. Supp. 3d 797, 809 (E.D. Tex. 2017) (following *Internet Patents*: "A § 101 inquiry properly relies on *intrinsic evidence* concerning the prior art in the context of determining whether a claim element is . . . conventional, routine, or contains an inventive concept.") (emphasis added). The Court in *Internet Patents* did not endorse Plaintiff's theory that real world evidence of nonobviousness such as commercial success has any bearing on subject matter eligibility. De Beers is not aware of any case—and Plaintiff cites none—where the Court considered the accused product's commercial success under § 101. *See In re Abel*, 838 F. App'x 558, 562 (Fed. Cir. 2021) ("[S]atisfying the requirement of non-obviousness does not imply eligibility under § 101, including under the second step of the *Alice* inquiry, because what may be non-obvious may still be abstract.").

# VENABLE | Fitzpatrick

Hon. Andrew L. Carter, Jr.
February 2, 2022
Page 3

biometric sensor, user interface, communication interface, and processor working together to (1) authenticate the user based on two factors—biometric information and secret information known to the user—and (2) generate encrypted authentication information to send to the secure registry through a point-of-sale device" were directed to ineligible subject matter. The Court explained that "verifying the identity of a user"—like verifying the identity of a physical item in the instant case—is a fundamental practice that had been performed since long before computers and the Internet. *Id*. at 1353. And it found that identifying a user based on multiple forms of conventional information using generic hardware did not amount to an inventive concept. *Id*. Thus, cases decided since the conclusion of briefing further support De Beers's motion to dismiss.

      Finally, Plaintiff's request for discovery (DE 53 at 5) fails because Plaintiff identifies nothing material to subject matter eligibility requiring discovery. Courts continue to routinely resolve § 101 disputes at the pleadings stage, "without the aid of expert testimony," where, as here, the patent-in-suit confirms the conventional nature of any arguably non-abstract elements. *Yu v. Apple Inc*., 1 F.4th 1040, 1046 (Fed. Cir. 2021); *Universal Secure Reg.*, 10 F.4th at 1358.

Respectfully submitted,


/s/ Christopher P. Borello
Christopher P. Borello

Copies to:

Counsel of Record (via ECF)