USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: __3/31/22__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
MAX A. RADY,

                 **Plaintiff,**

    -against-

BOSTON CONSULTING GROUP, LLC ET AL.,

                 **Defendants.**
-------------------------------------------------------------------- x

1:20-cv-02285 (ALC)

<u>**OPINION & ORDER**</u>

**ANDREW L. CARTER, JR., District Judge:**

      Plaintiff Max A. Rady brought suit against Defendants Boston Consulting Group ("BCG") and De Beers UK Limited ("De Beers") for patent infringement and misappropriation of trade secrets. Both Defendants moved to dismiss Plaintiff's infringement claim (Count I). For the reasons follow, Defendants' motion is GRANTED and Plaintiff's infringement claim (Count I) is DISMISSED.[1]

## PROCEDURAL HISTORY

      On March 13, 2020, Mr. Rady filed a Complaint seeking damages arising out of Defendants' patent infringement and misappropriation of trade secrets, as well as Defendant BCG's breach of contract. On May 20, 2020, Plaintiff filed an Amended Complaint. Plaintiff filed a Second Amended Complaint on September 4, 2020.

      On October 5, 2020, Defendants filed motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim under Count I (patent infringement) of the Second Amended Complaint. On November 2, 2020, Plaintiff filed his opposition to Defendants' motions. On

---

[1] Defendant BCG joined in De Beers' motion and separately submitted a motion to dismiss on the basis that Plaintiff's patent infringement claim (Count I) failed to state a claim for (1) direct infringement, (2) induced infringement, and (3) willful infringement. As I dismiss Plaintiff's patent infringement claim on the basis raised in De Beers' motion—that Plaintiff's '250 patent fails under the *Alice* test, discussed below—I do not address BCG's arguments.

November 16, 2020, Defendants submitted reply briefs in support of their motions. Accordingly, the Court considers the motions fully submitted.

## FACTUAL BACKGROUND

The following facts are taken from allegations contained in the Second Amended Complaint and are presumed true.

Mr. Rady underwent a Masters/Ph.D. program at Kings College at the University of London in August 2010, researching primarily "physical optical properties, photonics, spectroscopy, and statistical modeling and analysis for predictive rendering." Second Amended Complaint ("SAC") ¶ 6, ECF No. 30. Mr. Rady claims that he "incidentally" developed a method to "record to a blockchain the individual identification signatures of physical items that have unique random properties." *Id.* ¶ 7. This method involves "3D spatial mapping and spectral analysis to determine each individual identification signature," recording these signatures into a blockchain, which "allows users to guarantee the authenticity and provenance of each item's location and source throughout the supply chain, even where significant modifications are made to that item." *Id.* Mr. Rady claims that his method and system will quickly authenticate the provinces of gemstones "without the need to confirm with central authority no matter how many times the gemstone is cut, polished, or otherwise modified." *Id.* ¶ 8. Mr. Rady's technology has been claimed in United States Patent No. 10,469,250 ("'250 patent"), but he maintains that other aspects of the technology are kept in his confidence as trade secrets. *Id.* ¶ 9.

In June 2016, Mr. Rady was employed by BCG, working on projects unrelated to identifying counterfeit gemstones. *Id.* ¶ 10. Mr. Rady claims that in 2017, BCG began work with De Beers "to develop a method to identify and insure the provenance of gemstones," but could not develop a solution until contacting Mr. Rady. *Id.* ¶ 11. Mr. Rady then disclosed to BCG technology

and alleged trade secrets included in his then-unpublished patent application. *Id.* ¶ 13. BCG agreed that the information he provided would be held in strict confidence and they would not use the information without his consent. *Id.*

BCG then publicized TRACR, its gemstone provenance and authentication method developed for De Beers. *Id.* ¶ 14. Mr. Rady claims that this method was "substantially similar to the detailed method disclosed to BCG by Mr. Rady." *Id.* Mr. Rady alleges that BCG did not compensate him for the use of his technology and terminated his employment. *Id.* ¶ 15.

Plaintiff seeks judgment on four counts including patent infringement, common law misappropriation of trade secrets, misappropriation of trade secrets under the Defend Trade Secrets Act, and breach of contract against BCG. Plaintiff seeks compensatory damages and injunctive relief. Only the patent infringement claims are at issue for these motions.

## LEGAL STANDARD

Rule 12(b)(6) allows the Court to dismiss a claim if a party fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss, the Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Claims should be dismissed when a plaintiff has not pled enough facts that "plausibly give rise to an entitlement for relief." *Id.* at 679. A claim is plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). While not akin to a "probability requirement," the plaintiff must allege

sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Accordingly, where a plaintiff alleges facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557).

## DICUSSION

De Beers argues that Plaintiff's patent infringement claim should be dismissed because it is invalid under 35 U.S.C § 101. The Court agrees and finds that Plaintiff's claims are directed to patent-ineligible concepts.

**I. Plaintiff's Patent Claims Fail Under the *Alice* Test**

The Federal Circuit has asserted that "whether a claim is drawn to patent-eligible subject matter under [35 U.S.C.] § 101 is a threshold injury." *In re Bliski*, 545 F.3d 943, 950 (Fed. Cir. 2000), *aff'd sub. nom. Biliski v. Kappos*, 561 U.S. 593 (2010). 35 U.S.C § 101 defines patentable inventions as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C § 101. "The laws of nature, physical phenomena, and abstract ideas have been held not patentable." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980).

In order to determine if a process, machine, manufacture or composition is an abstract idea, the Supreme Court developed a two-part test, re-affirmed in *Alice Corporation Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014), and known as the "*Alice* test." First, the court must determine "whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice Corp. Pty. Ltd. v. CLS Bank Inter.*, 573 U.S. 208, 217 (2014). Second, the court must consider "what else is in the claims" before the court. *Id.* In order to determine this, the court must consider each claim individually and "as an ordered combination" to determine "whether the additional

elements "transform the nature of the claim" into a patent-eligible application." *Id.* The Court describes step two as a search for an "inventive concept," meaning an element or combination of elements that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* at 218 (quoting *Mayo Collaborative Services v. Prometheus Laboratories Inc.*, 556 U.S. 66, 72–73(2012)).

The Court finds that Plaintiff's '250 patent is directed at a patent-ineligible concept. First, Plaintiff's claims for "network nodes," "processing devices," "storage device," "communication subsystem," "3D scanning and spatial" devices, and "blockchains" are similar to the computer hardware in *Alice*. Importantly, Plaintiff's claims are directed at the abstract idea of collecting, analyzing, and storing data. *See Alice*, 573 U.S. at 225 (explaining that the use of a computer to obtain data and other computer functions are "well-understood, routine, conventional activities" (quoting *Mayo*, 556 U.S. at 73)). Moreover, the Court agrees with De Beers that tracking physical objects do not make Plaintiff's claims any less abstract. *See Automated Tracking Solutions, LLC v. Coca-Cola Company*, 723 F. App'x 989, 993 (Fed. Cir. 2018) (explaining that claims that "simply do not require a particular configuration or arrangement" are directed at an abstract idea). Therefore, Plaintiff's claim fails at step one of the *Alice* test.

Second, the Court finds that Plaintiff's claims individually and as "an ordered combination" do not transform the patent into a patent-eligible application. The Court is not persuaded by Mr. Rady's contention that the patent uniquely records gemstone data and logs this data in a "peer-to-peer network" maintained by Blockchain Authentication, thus enhancing the functionality of computers. Though recording a fingerprint for a gemstone, the patent is not improving the functionality of storing and processing data on a blockchain. Importantly, a blockchain is merely a ledger maintained and verified through a peer-to-peer network, and Plaintiff

does not describe how the patent improves blockchains. *See generally* Shawn S. Amuial, et. al, *The Blockchain: A Guide for Legal & Business Professionals*, § 1:2 (2016).

Moreover, Plaintiff's independent claims coupled with the dependent claims do not transform the patent into an inventive concept. First, the claims of a "cabinet," "light source," "calibration," "target," and "mechanism of movement" simply point to more hardware also known in the industry. *See* ECF No. 38 at 14. Second, the claims of "physical features comprising any of anomalies, defects, imperfections, noise and geometric irregularities," as well as the peer-to-peer network block chains already existed in the industry prior to Plaintiff's patent application. *See* De Beer's Br. 15–16, ECF No. 38. Therefore, Plaintiff's claims are still directed at the abstract idea of collecting, storing, and processing data, and Plaintiff's use of hardware does not improve the functionality of computers themselves.

In conclusion, the claims of Plaintiff's '250 patent fail under the *Alice* test, and, therefore, Plaintiff's patent infringement claim is dismissed.

## CONCLUSION

Accordingly, Defendants' motions are GRANTED and Plaintiff's infringement claim (Count I) is DISMISSED. The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 37 and 40. The parties shall file a joint status letter no later than 14 days from the date of this decision.

**SO ORDERED.**

**Dated: March 31, 2022**
    **New York, New York**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**